# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHEN DOUGLAS McCASKILL, #K-77293, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 17-cv-353-NJR ) |
| C/O MOORE, LT. CHRISTOPHER, C/O LANGSTON, WARDEN HUNTER, MS. STONE, LT. PEARL, SGT. GRIER, R. NANCE, and WARDEN ETCHIN, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 while he was incarcerated at Shawnee Correctional Center ("Shawnee"). Since he filed the case, he has been released from custody. (Doc. 6). Plaintiff claims that Officer Moore repeatedly harassed him by subjecting him to searches and forcing him to leave his coat unzipped in cold weather and that the other Defendants failed to respond to his complaints over this behavior.

The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.

1

28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

After fully considering the allegations in Plaintiff's Complaint, the Court concludes that one claim survives review under § 1915A.

## **The Complaint**

Plaintiff relates four encounters with C/O Moore; the first was on September 14, 2015. (Doc. 1, p. 7). Plaintiff was on his way to chow at 10:00 am, when Moore told him to unzip and

2

open his coat. Plaintiff complied, but when he began to zip the coat again, Moore told him to leave it unzipped. Plaintiff protested that he is anemic and he felt cold, but Moore insisted it "has to be that way today" and it was not that cold. Plaintiff left the coat unzipped.

When Plaintiff was returning from chow, Moore approached him again, remarking that Plaintiff was "all salty at him" about the incident, but Moore had a job to do. (Doc. 1, p. 7). Plaintiff informed Moore that he has the sickle cell anemia trait which makes him cold. Moore responded that his orders were for security reasons and said that the issue would not be a problem. Moore failed to give Plaintiff a shakedown slip, which is required any time a search of an inmate is conducted. (Doc. 1, p. 8).

The next day (September 15, 2015), Moore stopped Plaintiff again on the way to lunch, and again told Plaintiff to unzip his jacket. (Doc. 1, p. 8). Moore told Plaintiff he needed to see if Plaintiff was carrying anything on him. Moore again ordered Plaintiff to keep the jacket unzipped, dismissing Plaintiff's reminder that he was cold and anemic. Plaintiff points out that he had a stroke in 2011, which left him very weak and without feeling on his left side, so he poses no threat to anybody. Plaintiff complained to Lt. Christopher about Moore's unreasonable orders. Christopher informed Plaintiff that Moore is his brother-in-law. He suggested that Plaintiff re-zip his jacket when he is out of Moore's sight, because it wouldn't kill him to leave the coat open for a few minutes. When Plaintiff passed Moore again, Moore threatened Plaintiff with segregation if he did not leave his coat unzipped.

About a month later, on October 16, 2015, Plaintiff was going to the law library on a call pass. He was not wearing his jacket because it was in the laundry. Moore asked him where the jacket was, but Plaintiff declined to answer. (Doc. 1, p. 9). Plaintiff had written two grievances on Moore for the first two incidents, and he wrote to Warden Hunter with an urgent request to

speak with him. As a result, Plaintiff had been called to speak with Logston (Internal Affairs) to discuss his complaints, and he was under the impression that Moore would be warned or investigated, however, nothing further was done. (Doc. 1, pp. 10-11).

Finally, on October 18, 2015, while Plaintiff was on his way to Health Care, Moore "harassed" him and shook him down again, while Sgt. Grier watched. Two other inmates had just passed by without being searched. Plaintiff believed Moore targeted him because he had written three grievances on Moore by that time. (Doc. 1, p. 9). Moore had Plaintiff unzip his jacket, and Moore opened up Plaintiff's pants pocket. Moore asked where Plaintiff's jacket had been the other day, since he thought Plaintiff had to have it at all times. Plaintiff said it was in the laundry, and he had not expected to be called out for library that day. As with the other incidents, Moore failed to issue a shakedown slip.

Plaintiff claims that Moore was unconcerned about Plaintiff's health issues and only continued to "harass" him in order to look good in front of his superiors. (Doc. 1, p. 7). He contends that Moore's treatment of him was an "abuse of his authority," which was allowed to continue when Grier and Christopher failed to intervene. (Doc. 1, p. 9).

Warden Etchin and Counselor Nance never responded to Plaintiff's grievances against Moore. (Doc. 1, pp. 10-11). Plaintiff explained his problems with Moore to Ms. Stone (mental health therapist) on October 22, 2015, and asked her to notify Lt. Pearl about the ongoing harassment, but Plaintiff heard nothing further. (Doc. 1, p. 11). Plaintiff had previously written to Pearl to complain about Moore but had received no response.

Plaintiff seeks monetary damages for the "deliberate indifference, harassment, pain & suffering, mental anguish & distress, abuse of authority, & unprofessionalism" he suffered. (Doc. 1, p. 14).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Eighth Amendment claim against Moore for deliberate indifference to Plaintiff's medical condition of anemia, and/or for subjecting him to unconstitutional conditions of confinement, by requiring him to leave his jacket unzipped while walking in cold weather on three occasions;

**Count 2:** Eighth Amendment claim against Moore for harassment, for targeting Plaintiff to be questioned and searched on three occasions;

**Count 3:** First Amendment retaliation claim against Moore, for subjecting Plaintiff to searches and requiring him to leave his jacket unzipped, after Plaintiff filed grievances against Moore for the same conduct;

**Count 4:** Claims against Christopher and Grier for witnessing two of the incidents with Moore, yet failing to intervene;

**Count 5:** Claims against Logston, Etchin, Hunter, Nance, Stone, and Pearl for failing to respond to or investigate Plaintiff's grievances and complaints about Moore's behavior.

Plaintiff shall be allowed to proceed with a portion of the retaliation claim in Count 3. The claims in Counts 1, 2, 4, and 5 shall be dismissed, however, pursuant to § 1915A.

### Dismissal of Count 1 – Deliberate Indifference

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*,

428 U.S. 153, 173 (1976)). Two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause with regards to any conditions of confinement in prison. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A medical need may be considered "serious" where: (1) failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain"; (2) the prisoner has "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) has "a medical condition that significantly affects an individual's daily activities"; or (4) experiences "chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

The second requirement in an Eighth Amendment claim is a subjective one—establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from the conditions of confinement, or from a medical need. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if a plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm to the inmate. *Farmer*, 511 U.S. at 842. It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

In this case, Plaintiff describes two occasions when Moore required him to keep his coat unzipped while he walked outside in September, and one in October, during the late summer and fall season in Southern Illinois. Plaintiff alleges that he has the sickle cell anemia trait, which

6

causes him to feel cold much of the time, thus he was uncomfortable when he was not allowed to zip up his coat. While sickle cell anemia can be a serious medical condition, the only effect of this condition that Plaintiff mentions is his tendency to feel colder than other people. He does not suggest that this symptom poses a significant threat to his health. Based on these facts, Plaintiff's anemia does not qualify as an objectively serious condition under the criteria listed above. *See Gutierrez*, 111 F.3d at 1373. Plaintiff's description of the three incidents when Moore made him leave his coat open supports the conclusion that his medical condition did not pose an excessive risk to his health as a result of Moore's actions.

According to Plaintiff's account, he did not remain outside for an extended period of time when he encountered Moore, because he was walking between his cell and either the chow hall or health care unit. On another day in October, Plaintiff was able to make a trip to the law library without wearing his coat at all. Plaintiff does not describe any severe symptoms or medical complications as a result of any of these incidents with Moore. Thus, the pleading provides no factual support for the proposition that walking outside with his coat unzipped exposed Plaintiff to a substantial risk to his health or aggravated his anemia. Instead, the Complaint describes three instances where Plaintiff experienced mild and temporary discomfort, which is not sufficient to violate his constitutional rights. *See Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir. 1986) (mere discomfort and inconvenience do not implicate the Constitution).

Because Plaintiff has not shown that he suffered from an objectively serious medical ailment or that the conditions posed an unreasonable or excessive risk to his health, he has not met the first element of an Eighth Amendment claim. Thus, even though Plaintiff told Moore that he felt cold and wanted his coat zipped, Moore's insistence that Plaintiff's coat remain open did not mean that Moore knowingly exposed Plaintiff to a substantial risk of serious harm.

7

Plaintiff's factual allegations do not support an Eighth Amendment claim for deliberate indifference to his medical condition or for subjecting him to unconstitutional conditions of confinement. To the contrary, this claim borders on frivolous, when considering Plaintiff's factual statements in light of the applicable law. **Count 1** shall therefore be dismissed with prejudice pursuant to § 1915A.

### Dismissal of Count 2 – Harassment

Plaintiff repeatedly describes Moore's behavior as harassment, as well as "abuse of authority" and "unprofessionalism." (Doc. 1, p. 14). These labels strike the Court as accurate descriptions of Moore's singling Plaintiff out for searches, and possibly for ordering Plaintiff to keep his coat unzipped.[1] Even gratuitous treatment such as this does not, however, in and of itself, violate the Constitution.

> Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam) (Eighth Amendment); *Patton v. Przybylski,* 822 F.2d 697, 700 (7th Cir. 1987) (due process); *accord Williams v. Bramer*, 180 F.3d 699, 705-06 (5th Cir.), *clarified on rehearing*, 186 F.3d 633 (5th Cir. 1999) (equal protection). *See generally Shabazz v. Cole*, 69 F.Supp.2d 177, 199-201 (D. Mass. 1999) (collecting cases).

*DeWalt v. Carter* 224 F.3d 607, 612 (7th Cir. 2000).

Plaintiff's description of his feelings of distress and discomfort at being picked on by Moore does not indicate that he suffered a level of serious psychological harm sufficient to support a claim for cruel and unusual punishment based on the verbal harassment or the searches. *See Beal v. Foster*, 803 F.3d 356, 357-58 (7th Cir. 2015). Nor does it appear that the alleged harassment by Moore, or his refusal to allow Plaintiff to zip his coat, placed Plaintiff at risk of

---

[1] Moore's statement that he required Plaintiff to keep his coat open as a security measure is a plausible reason for this order.

physical harm or injury. *See Id*. Notably, prison inmates are routinely subjected to searches, both of their persons and their cells. The incidents at issue here, where Plaintiff was questioned by Moore only four times and searched three times within an approximate month-long period, are not so outrageous as to implicate constitutional concerns.

In addition, Moore's failure to issue any shakedown slips after the searches, which is allegedly required by prison rules, does not implicate any federal Constitutional rights. A federal court does not enforce state law or regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Thus, even if Moore violated a state rule, Plaintiff may not maintain a claim in this Court on that basis.

For these reasons, **Count 2** shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Count 3 – Retaliation

Plaintiff raises a possible retaliation claim against Moore when he states that after he submitted three grievances regarding Moore's harassment and targeted searches, Moore continued to single out Plaintiff to be searched. (Doc. 1, pp. 9, 28).

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement, because such activities are protected by the First Amendment. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put

those charged with the retaliation on notice of the claim. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). In order to state a retaliation claim, a prisoner's complaint must set forth "a chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *see also Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987). The plaintiff must have engaged in some protected First Amendment activity, experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).

In this case, Moore's search and "harassment" of Plaintiff on September 14, 2015, occurred before Plaintiff had filed any grievances against Moore. Plaintiff filed his first grievance as a result of that incident (Doc. 1, pp. 22-23), but when Moore stopped Plaintiff for a second time the very next day (September 15, 2015), there is no indication that Moore was aware of the first grievance. His actions cannot be characterized as "retaliation" if he was unaware that Plaintiff lodged a complaint against him. The third incident, on October 16, 2015, was nothing more than Moore verbally questioning Plaintiff about where his jacket was. That comment does not rise to the level of an "adverse action" that would support a retaliation claim.

Plaintiff's only statement about possible retaliation is in connection with the fourth and final incident with Moore on October 18, 2015. (Doc. 1, pp. 9, 28). Plaintiff notes that "due to me writing 2 prior grievances and a 3rd one on 10-16-15 he [Moore] continues to provoke confrontation." (Doc. 1, p. 9).

This chronology of events (three grievances followed by one more incident of Moore stopping and searching Plaintiff) may support a retaliation claim. The fact that Moore's "retaliation" of October 18, 2015, consisted of the exact same actions directed at Plaintiff

(stopping and questioning Plaintiff about his business and then searching him) that Moore had engaged in before he knew anything about Plaintiff's grievances, however, undermines the plausibility of a claim that Moore was motivated on October 18 by a desire to retaliate against Plaintiff for the grievances. Further, it is questionable whether this search, annoying as it may have been to Plaintiff, rose to the level of an "adverse action" that would be likely to deter Plaintiff's future First Amendment activity. *See Bridges*, 557 F.3d at 551. The opposite appears to be true, as Plaintiff immediately filed another grievance over the October 18 incident.

Nonetheless, at this early stage, Plaintiff has met the minimal pleading requirements to state a potential retaliation claim—but only in relation to the incident with Moore on October 18, 2015. Accordingly, Plaintiff shall be allowed to proceed against Moore with the portion of the retaliation claim in **Count 3** that is based on the events of October 18 only.

### Dismissal of Count 4 – Failure to Intervene

Plaintiff sues officers Christopher and Grier because they were present and/or observed Moore's questioning and search of Plaintiff and did nothing to stop Moore's actions. Plaintiff complained to Christopher after the first incident on September 14. Grier was standing next to Moore on October 18 while Moore questioned Plaintiff, searched him, and made him leave his jacket unzipped.

As explained above with respect to Counts 1 and 2, Moore's conduct did not violate Plaintiff's Eighth Amendment rights. Further, Plaintiff's description of the incidents does not suggest that Moore did anything to put another prison official on notice that his actions were improper. Because there was no underlying constitutional violation by Moore, neither Christopher nor Grier can be held liable for failing to stop Moore's actions of questioning and searching Plaintiff and making him leave his coat open.

Further, Grier cannot be held liable for failing to stop Moore's incident of alleged retaliation on October 18, 2015. When Moore searched and questioned Plaintiff on that date, there is no indication from the factual narrative in the Complaint that Grier knew about Plaintiff's prior grievances against Moore. Therefore, Grier could not have been aware that Moore's actions might be construed as retaliation, and he had no reason to intervene on that basis.

**Count 4** shall therefore be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Dismissal of Count 5 – Grievance Mishandling

Finally, Plaintiff claims that Wardens Etchin and Hunter, Officers Pearl and Nance, therapist Stone, and Internal Affairs officer Logston all failed to take any action in response to his grievances and complaints about Moore's conduct.

As a general principle, the mishandling, failure to investigate, or failure to respond to grievances does not implicate any constitutional right. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Thus, any failure to investigate Plaintiff's grievances, or any other action or inaction with regard to the grievance procedure on the part of Logston, Etchin, Hunter, Nance, Stone, or Pearl, who did not participate in Moore's conduct, will not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison

officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

Furthermore, because the deliberate indifference and harassment claims against Moore (Counts 1 and 2) have no merit, these additional Defendants cannot be held liable for failing to act in response to Plaintiff's grievances over those matters. As to the single grievance that mentions possible retaliation on October 18, 2015 (Count 3), by the time Plaintiff complained about the events of October 18, Moore's alleged retaliatory actions had already been completed and did not recur. None of the Defendants who Plaintiff contacted after October 18 could have done anything to prevent Moore's alleged retaliation after the fact. It thus cannot be said that any of these Defendants turned a blind eye to, or condoned, Moore's alleged retaliation. *See Wilson v. Warren County, Illinois,* 830 F.3d 464, 469 (7th Cir. 2016); *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995). As a result, there is no basis to hold Logston, Etchin, Hunter, Nance, Stone, or Pearl liable in connection with the retaliation claim.

For these reasons, **Count 5** shall be dismissed with prejudice, for failure to state a claim upon which relief may be granted.

## Disposition

**COUNTS 1, 2, 4, and 5** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**CHRISTOPHER, LOGSTON, HUNTER, STONE, PEARL, GRIER, NANCE,** and **ETCHIN** are **DISMISSED** from this action without prejudice.

With respect to the retaliation claim in **COUNT 3** based on the events of October 18, 2015, the Clerk of Court shall prepare for **MOORE**: (1) Form 5 (Notice of a Lawsuit and

Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge

Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: June 14, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**